KLEIN LAW GROUP LLLC

ROBERT G. KLEIN          #1192-0
KURT W. KLEIN            #10357-0
DAVID A. ROBYAK          #10321-0
JAMES M. YUDA            #10328-0
Waterfront Plaza #3-480
500 Ala Moana Blvd.
Honolulu, HI 96813
Telephone: (808) 591-8822
Email: *rgk@kleinlg.com; kwk@kleinlg.com;*
*dar@kleinlg.com; jmy@kleinlg.com*

Attorneys for Plaintiff
DONNA MARIE PASCUA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONNA MARIE PASCUA,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | CIVIL NO. CV 23-00374 DKW-WRP (Contract, Tort)<br><br>FIRST AMENDED COMPLAINT; JURY DEMAND<br><br><br><br><br><br>No Trial Date |

## FRIST AMENDED COMPLAINT

Comes now Plaintiff DONNA MARIE PASCUA ("**Plaintiff**" or

"**DONNA**"), by and through her attorneys, Klein Law Group LLLC, for her

Complaint against Defendant STATE FARM FIRE AND CASUALTY

COMPANY (d.b.a., "**State Farm**" or "**Defendant**"), and hereby alleges and avers

as follows:

## PARTIES

1.    At all times material to this Complaint, Plaintiff DONNA MARIE

PASCUA was a resident of the State of Hawaiʻi.

2.    At all times material to this Complaint, Defendant STATE FARM

FIRE AND CASUALTY COMPANY, was a registered foreign insurance provider

with its principal place of business and mailing address in the State of Illinois, SBS

Company Number 154527670, which operated, conducted its business, and

provided insurance coverage in the State of Hawaiʻi.

## JURISDICTION AND VENUE

3.    Plaintiff filed her Complaint in the Circuit Court of the First Circuit

Court, State of Hawaiʻi ("**State Court**") on June 8, 2023 [Dkt. 1] ("**Complaint**").

The Complaint alleged that the State Court had jurisdiction and venue over the

above Defendant under Hawaiʻi Revised Statutes ("**HRS**") §§ 603-21.5 and 634-35

because the causes of action arise from the parties' transactions within the City and

County of Honolulu, State of Hawaiʻi.  The insurance policy at issue was delivered
and takes effect regarding real property located within the City and County of
Honolulu, State of Hawaiʻi.

4.      Plaintiff further alleged the State Court had jurisdiction under HRS §
431:10-221, which requires all insurance contracts issued in Hawaiʻi be subject to
the laws of the State and jurisdiction of the State Courts by the terms of the
contracts themselves.  Plaintiff alleged that venue was proper before the State
Court pursuant to HRS §§ 603-36, 431:1-215 and 431:10-241.

5.      On September 7, 2023, Defendant filed its Notice of Removal.  *See*
Dkt. 1.

6.      In its Notice of Removal, Defendant avers it is "an Illinois corporation
with its principal place of business in Bloomington, Illinois" and that "[t]here is
complete diversity of citizenship between Plaintiff and Defendant."  Dkt. 1 ¶¶ 2-3.

7.      Defendant asserts in its Notice of Removal that "the amount in
controversy is in excess of $75,000.00."  *Id.* ¶ 4.

8.      Accordingly, as averred by Defendant, "[t]his Court has original
jurisdiction over this action pursuant to 28 U.S.C. § 1332."

9.      Defendant's admissions concerning its place of incorporation,
citizenship, complete diversity, and the amount in controversy, were accepted by
Plaintiff; Plaintiff did not object to removal of this action from State Court.

## RELEVANT BACKGROUND

### The Santiago Family

10.     AUGUST RENDALL SANTIAGO, SR. ("**AUGUST SANTIAGO, SR.**") and MABEL R. SANTIAGO ("**MABEL SANTIAGO**") (collectively "**Grandparents**"), husband and wife, were the parents of AUGUST RENDALL SANTIAGO, JR. ("**AUGUST SANTIAGO, JR**." or "**Father**").

11.     Grandparents are deceased.  MABEL SANTIAGO passed away in or about 1991.  AUGUST SANTIAGO, SR. passed away on or about February 27, 1993.

12.     At all times material to this Complaint until his death on or about September 16, 2010, AUGUST SANTIAGO, JR. was married to SHIRLEY ANN SANTIAGO ("**SHIRLEY SANTIAGO**" or "**Mother**").

13.     SHIRLEY SANTIAGO passed away on May 1, 2020.

14.     AUGUST SANTIAGO, JR. and SHIRLEY SANTIAGO had four children during their marriage:  SANDRA ANN SANTIAGO ("**SANDRA**"), JASON SANTIAGO ("**JASON**"), JONATHAN SANTIAGO ("**JONATHAN**"), and DONNA (collectively, "**Santiago Children**").

/ /

/ /

4

### The Puninoni Trust

15.     By Deed of Trust dated March 1, 1989 and recorded in the State of Hawaiʻi Bureau of Conveyances Regular System ("**BOC**") on January 25, 1994 as Document No. 94-012554 ("**Deed of Trust**"), Grandparents, as Grantors, ("**Puninoni Settlors**") conveyed to AUGUST SANTIAGO, JR. and SHIRLEY SANTIAGO, Trustees ("**Puninoni Trustees**") that certain parcel of land with improvements located at 2682 Puninoni Place, Wahiawa, Hawaiʻi 96786, Tax Map No. 1-7-5-025-117 ("**Puninoni Property**"). A true and correct copy of the Deed of Trust is hereto as Exhibit "1."

16.     The Deed of Trust conveyed the Puninoni Property in trust to the Puninoni Trustees for the benefit of the Santiago Children with express instructions for management and final disposition of the Puninoni Property ("**Puninoni Trust**").

17.     The Deed of Trust empowers the Puninoni Trustees "to hold, manage and control the trust estate and to borrow upon the security of the trust property for the purpose of obtaining funds for maintenance and repair of the premises, or for the support, maintenance and education of the [Santiago Children]" with the intent that the "premises may be used as a residence for [the Santiago Children]."

18.     Upon the death of Grandparents, the Puninoni Trust became irrevocable.

19.     The Deed of Trust provides that "[t]his trust shall terminate upon the decease of both [Puninoni Trustees] and upon such termination, [the Puninoni Property] shall be deemed to have been transferred, conveyed, and delivered to the [Santiago Children] who shall be living at the time of the termination of the trust, in equal shares, as Tenants in Common, in fee simple, absolute."

20.     Under the Deed of Trust, if one of the Puninoni Trustees "should die or . . . for any reason refuse to qualify, resign, cease or be unable to act as Trustee, then ***the remaining person shall act as sole Trustee*** with all of the powers and authority contained therein" (emphasis added).

21.     Upon information and belief, no other trust document establishing or amending the Puninoni Trust was recorded or executed by the Puninoni Settlors, and thus the Deed of Trust contains all written express terms of the Puninoni Trust.

22.     The trustees and beneficiaries of the Puninoni Trust had insurable interests in the Puninoni Property in their capacity as trustees pursuant to HRS § 431:10E-101.

23.     Pursuant to the Deed of Trust, upon the death of AUGUST SANTIAGO, JR., SHIRLEY SANTIAGO became the sole Trustee of the Puninoni Trust.

24.     On May 1, 2020, upon the death of SHIRLEY SANTIAGO, the Puninoni Trust terminated.

## Lawsuit and Related Settlement Agreements

25.     Prior to SHIRLEY SANTIAGO's death, Plaintiff brought claims against her older brother JONATHAN in the Circuit Court of the First Circuit, State of Hawaiʻi related, in part, to the Puninoni Property.

26.     JONATHAN agreed to settle Plaintiff's claims, resulting in a global Settlement and Mutual Release Agreement ("**Settlement Agreement**") executed by Santiago Children on October 5, 2020.

27.     Under the terms of the Settlement Agreement, JONATHAN and JASON transferred their interests in the Puninoni Property to Plaintiff and her sister SANDRA.

28.     In a subsequent Conditional Settlement Agreement and Mutual Release ("**Conditional Agreement**") executed on October 8, 2020, SANDRA further agreed to transfer her interest in the Puninoni Property to Plaintiff.

29.     On July 13, 2021, the Circuit Court of the First Circuit State of Hawaiʻi appointed Plaintiff as successor trustee of the Puninoni Trust and approved the Settlement Agreement among Plaintiff, JONATHAN, JASON, and SANDRA.  A copy of order is attached hereto as Exhibit "2."

30.     Plaintiff had an insurable interest in the Puninoni Property in her capacity as successor trustee of the Puninoni Trust pursuant to HRS § 431:10E-101.

7

31.     Each of Plaintiff's three siblings and co-beneficiaries of the Puninoni Trust executed quitclaim deeds transferring all their right, title, and interest in the Puninoni Property, if any, to Plaintiff.  True and correct copies of the deeds recorded on December 2, 2021, are attached hereto as Exhibits "3" – "5."

32.     Plaintiff had an insurable interest in the Puninoni Property as title holder of record pursuant to HRS § 431:10E-101.

## Plaintiff Tenders Insurance Claim to Defendant

33.     On or about April 4, 2021, the Puninoni Property was damaged in a plumbing/water intrusion event ("**Incident**").

34.     Plaintiff filed a claim with Defendant pursuant to the applicable insurance contract ("**Contract**") and was assigned the following claim number: 51-18H5-02B.  Upon information and belief, the homeowner insurance policy in place at the time of the incident listed SHIRLEY SANTIAGO as the named insured. However, Plaintiff had taken over payments of the premiums and SHIRLEY SANTIAGO's proper insurable interest in the Puninoni Property.

35.     ***Defendant accepted coverage for the Incident and there is no dispute over the amount of damage to the Puninoni Property***.

36.     Defendant issued three checks in attempted resolution of the claim. The issue date of the first check is October 14, 2022, in the amount of $23,129.14 and further identified as number 115901473J  ("**First Check**"), the issue date of

the second check is October 14, 2022, in the amount of $12,414.22  and further
identified as number 115901478J ("**Second Check**"), and the issue date of the
third check is October 19, 2022, in the amount of $1,903.46 and further identified
as number 515999856 ("**Third Check**").

37.     The First Check and Second Check are both incorrectly made payable
to "Estate of Shirley Santiago", and the Third Check is made payable to "Santiago,
Shirley."

38.     Pursuant to HRS § 431:10E-101, insurance policies covering property
can only be issued to a person having an insurable interest, which is defined as:
"any lawful and substantial economic interest in the safety or preservation of the
subject of the insurance free from loss, destruction, or pecuniary damage."

39.     Additionally, policies that specifically name a person to be insured,
may only be applied to "the person's own proper interest," which includes interest
as a trustee. HRS § 431:10-205; *Duncan v. Sun Mut. Ins. Co.*, 12 La. Ann. 486, 487
(1857).

40.      SHIRLEY SANTIAGO, individually, did not have an ownership
interest in the Puninoni Property.  SHIRLEY SANTIAGO had an insurable interest
in preservation of the property as the designated trustee and, thus, holder of legal
title to the Puninoni Property.

9

41.     When SHIRLEY SANTIAGO passed away, her insurable interest in the Puninoni Property did not transfer to her estate, but rather to the successor trustee.

42.     The insurance policy between SHIRLEY SANTIAGO and Defendant continued after SHIRLEY SNATIAGO passed, and Plaintiff, as the acting and court appointed successor trustee, acquired the insured interests and rights of SHIRLEY SANTIAGO when Plaintiff continued paying the premiums and continued the obligations under the Contract.

43.     The Third Check was eventually accepted and deposited; however, Plaintiff's bank refused to honor the First Check and Second Check.

**Defendant Refused to Reissue the First Check and Second Check**

44.     Plaintiff, through her counsel, contacted Defendant on June 1, 2021, to request Defendant reissue the drafts in Plaintiff's name.

45.     Plaintiff also notified Defendant that the claim, which Defendant did not dispute, was related to water damage (sewage) to Plaintiff's home and had made the residence uninhabitable.

46.     Defendant responded by letter dated June 7, 2021, which included enclosed copies of the First Check, Second Check, and Third Check as follows: "[SHIRLEY SANTIAGO] was the only listed Named Insured on this policy. Therefore, as [SHIRLEY SANTIAGO] is deceased, the payments associated with

this claim have been issued to the Estate of [SHIRLEY SANTIAGO] as the only payee."

47.    As a result of Defendant's refusal to reissue the First Check and Second Check to Plaintiff, Plaintiff had to pay for and make necessary repairs to maintain a safe and healthful living environment at the Puninoni Property.

48.    On April 28, 2022, Plaintiff, through her counsel, contacted Defendant again to request Defendant reissue the drafts in Plaintiff's name.

49.    Plaintiff updated Defendant regarding pertinent facts and circumstances that had transpired since June 2021 after Defendant denied her initial request to reissue the drafts.

50.    Plaintiff notified Defendant that on July 13, 2021, Plaintiff was appointed successor trustee of the Puninoni Trust and that the First Circuit Court of the State of Hawai'i had approved the Settlement Agreement.

51.    Pursuant to the Settlement Agreement, Plaintiff informed Defendant that Plaintiff's siblings/co-beneficiaries had executed quitclaim deeds transferring all their right, title, and interest in the Puninoni Property to Plaintiff.

52.    Plaintiff, individually and as trustee of the Puninoni Trust, transferred title to the Puninoni Property to herself and her husband as tenants by the entirety.

53.    On May 10, 2022, Defendant responded as follows: "At the time of this loss, our named insured, [SHIRLEY SANTIAGO], had an insurable interest in

11

this property.  As she was deceased, payments were issued to the 'Estate of Shirley Santiago.'"

54.    Defendant again refused to reissue the First Check and Second Check.

55.    In addition to SHIRLEY SANTIAGO's estate not being entitled to the insurance recovery, no estate was ever probated as the assets were very limited.

56.    Therefore, if Plaintiff were forced to probate SHIRLEY SANTIAGO's estate to enable disbursement of the First Check and Second Check, the overall costs to recover the insurance proceeds would likely exceed the value of the proceeds or substantially diminish them.

## COUNT I: BREACH OF CONTRACT

57.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 56 above, as if set forth fully herein.

58.    The Contract is an enforceable agreement between Plaintiff and Defendant, whereby Plaintiff paid insurance premiums under a continuing policy, where she was reasonably expected to become a beneficiary or assigned or successor insured, and Defendant agreed to provide insurance in certain covered events.

59.    Plaintiff timely and substantially performed pursuant to her obligations under the Contract and any related documents.

60.     Defendant agreed that the policy was applicable to the claim filed by Plaintiff and did not dispute the amount of the claim.

61.     Defendant breached the material terms of the Contract by refusing, in bad faith, to re-issue the First Check and Second Check in Plaintiff's name, thereby preventing Plaintiff from receiving the insurance proceeds she was entitled to.

62.     Because Plaintiff paid the premiums, Plaintiff reasonably expected Defendant to perform according to the terms of the Contract, and reasonably relied on the agreed exchange of performance to her detriment.

63.     Defendant's breach has deprived Plaintiff of the benefit of the bargain that she paid considerably to receive.

64.     Defendant's breach has caused Plaintiff to incur substantial costs and expenses, including but not limited to, construction and material costs related to the Incident, court costs and attorneys' fees, and damages in amounts to be proven at trial.

## COUNT II: UNJUST ENRICHMENT

65.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 64, as if set forth fully herein.

66.     Plaintiff conferred a benefit onto Defendant by making payments contemplated and set forth under the Contract.

67.     Defendant retained the benefit paid by Plaintiff.

68. Defendant's retention of the value of the payments under the Contract is unjust if Defendant is not required to distribute those insurance proceeds to Plaintiff.

69. As a result of Defendant's unjust retention of the payments under the Contract, Plaintiff has suffered economic and general damages, in amounts to be proven at trial.

## COUNT III: BAD FAITH

70. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-69, as if set forth fully herein.

71. The tort of bad faith in the insurance context is available under Hawaiʻi law. *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 127 (1996).

72. Defendant is subject is to an obligation of good faith and fair dealing in performing their contractual obligations. However, insurance companies owe a special duty of good faith and fair dealing that extends beyond contractual obligations. Thus, Defendant owes Plaintiff an obligation of equal consideration, fairness, and honesty.

73. Defendant's breach of duty to Plaintiff transcended breach of contract by:

> a. Providing illusory insurance coverage for the Puninoni Property, acting as a retroactive annulment;

14

b.  Forcing Plaintiff to litigate in order to obtain reissued checks;

c.  Interpreting policy provision and the factual circumstances so as to resolve known ambiguities and uncertainties against insured and to favor its own interest over those of Plaintiff;

d.  Failing to act properly and reasonably upon claims and communications from Plaintiff and her counsel;

e.  Misrepresenting and misapplying insurance policy provisions, coverages, and exclusions;

f.  Misapplying the facts of the case in order to reach the incorrect conclusion that the First Check and Second Check should be issued only to SHIRLEY SANTIAGO, individually; and

g.  Taking the actions referenced herein as part of a systematic and deliberate scheme to withhold policy benefits that would otherwise be due and payable Plaintiff.

74.     Plaintiff is informed and believes that Defendant's officers, directors and/or managing agents and/or employees participated in, authorized, and/or ratified the wrongful conduct of Defendant as alleged herein.

75.     As a result of the bad faith conduct of Defendant, Plaintiff has suffered substantial injuries and related damages.

76.    The above-described conduct of Defendant has been and continues to be unreasonable, capricious, and arbitrary, and constitutes a breach of the duty of an insurer act in good faith and fair dealing.  The conduct described herein further constitutes malicious, oppressive, and/or despicable conduct and conscious disregard of Plaintiff's rights, and stems from improper and unjust motives, including Defendant's desire to reduce or avoid its obligations to Plaintiff, so as to justify an award of punitive damages.

77.    Defendant's conduct, including but not limited to its refusal to reissue the First Check and Second Check, failure to thoroughly and fairly investigate all issues, taking unreasonable, biased, and self-serving positions, was contrary to law and constitutes a breach of the covenant of good faith and fair dealing owed to Plaintiff.

78.    Plaintiff has suffered damages as a result of Defendant's bad faith conduct, in an amount to be proven at trial.

## COUNT IV: UNFAIR AND DECEPTIVE PRACTICES

79.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-78, as if set forth fully herein.

80.    Unfair and deceptive acts or practices in the conduct of any trade or commerce, generally, is unlawful pursuant to HRS § 480-2.  Unfair and deceptive trade practices in the business of insurance is also unlawful pursuant to HRS §

431:13-102.  Any consumer harmed by such practices or acts may bring a cause of

action pursuant to HRS § 480-13(b) for damages and to enjoin such unlaw

practices.

81.    Plaintiff is a consumer.

82.    Insurance companies are required to comply with the State of

Hawaii's insurance code. HRS § 431:1-101. The statutory code outlines provisions

describing acts and practices that are considered unfair and deceptive in the

business of insurance within HRS § 431:13-103. Germane to this matter is the list

of "[u]nfair claim settlement practices" outlined in HRS § 431:13-103(a)(11), most

notably including:

> Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.
> Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
>
> Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds.

83.    Defendant's refusal to reissue the First Check and Second Check

under Plaintiff's name effectively acts as a retroactive cancellation, prohibited

under HRS § 431:10-227, by depriving Plaintiff's access to amounts due and

forcing forfeiture of the value of the First Check and Second Check.

84.    If Plaintiff desires to recover the value of the insurance proceeds she

is entitled to, she must either probate her Mother's estate, or bring the action

herein. Under either circumstance, the value of the insurance proceeds is substantially diminished or consumed compared to the full value she is entitled to or would reasonably be awarded through legal action.

85.    Taken together, the refusal operates to unfairly obstruct Plaintiff from accessing insurance proceeds she is entitled to.

86.    Defendant's refusal to reissue the First Check and Second Check is an unfair and deceptive act and practice.

87.    Plaintiff is entitled to recover threefold damages, attorneys fees, and costs in amounts to be proven at trial.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF

88.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-87, as if set forth fully herein.

89.    By letter dated June 1, 2021, Plaintiff timely notified Defendant of the claim and requested Defendant provide coverage by reissuing the checks to Plaintiff.

90.    By letter dated June 7, 2021, Defendant advised Plaintiff's counsel that Defendant had determined that it was unable to distribute proceeds to Plaintiff.

91.    There is an actual and continuing controversy under Hawaiʻi Revised Statutes ("HRS") § 632-1 between Plaintiff and Defendant as to Plaintiff's entitlement to distribution of proceeds under the Contract.  Thus, there is a dispute

over the interpretation of the Contract and the applicable laws of the State of Hawaiʻi that prohibit Defendant from acting in bad faith.

92.     Plaintiff is entitled to a declaration that Defendant's decision that it would not distribute proceeds to Plaintiff by reissuing the First Check and Second Check in Plaintiff's name constitutes a breach of the Contract under the laws of the State of Hawaiʻi.

93.     Further, Plaintiff is entitled to a declaration that Defendant incorrectly and unreasonably refused to perform under the terms Contract, and that such conduct constitutes bad faith given the facts the circumstances described herein.

94.     A declaration regarding the parties' respective rights under the Contract and order mandating payment to Plaintiff will serve to terminate this controversy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant and in favor of Plaintiff as follows:

A.      That judgment be entered in Plaintiff's favor against Defendants.

B.      That the Court declare as a matter of law that Defendant is obligated under the Contract to distribute proceeds to Plaintiff.

C.      That the Court declare as a matter of law that Defendant's conduct constitutes bad faith under the laws of the State of Hawaiʻi.

D.     That Plaintiff be awarded special, general, and punitive and/or exemplary damages, in an amount to be proven at trial.

E.     That pre-judgment and post-judgment interest be awarded in Plaintiff's favor.

F.     That Plaintiff be awarded his reasonable attorneys' fees and costs against Defendants.

G.     That Plaintiff be awarded such other and further relief as the Court deems just and proper.

DATED: Honolulu, Hawai'i, October 11, 2023.

/s/ *Robert G. Klein*
ROBERT G. KLEIN
KURT W. KLEIN
DAVID A. ROBYAK
JAMES M. YUDA
JEANELLE C. MILLER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONNA MARIE PASCUA, | CIVIL NO. CV 23-00374 DKW-WRP (Contract) |
| Plaintiff, | |
| | JURY DEMAND |
| vs. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |
| | No Trial Date |

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff

DONNA MARIE PASCUA, through her counsel, hereby demands a trial by jury

in this action on all issues so triable.

DATED:  Honolulu, Hawaii, October 11, 2023.


*/s/ Robert G. Klein*
ROBERT G. KLEIN
KURT W. KLEIN
DAVID A. ROBYAK
JAMES M. YUDA

Attorneys for Plaintiff
DONNA MARIE PASCUA